IRVING, P.J.,
dissenting:
¶ 32. The majority finds that Herring-ton’s trial counsel was ineffective because he failed to object, at trial, to the admission into evidence of three separate judgments evidencing Herrington’s prior convictions of drug offenses. The majority then finds that these admissions resulted in such prejudice that Herrington’s right to a fair trial was undermined. Stated another way, the majority finds that had these admissions not occurred, the jury would likely have reached a different result. I disagree. Therefore, I dissent. I would affirm Herrington’s conviction and sentence for aggravated assault and possession of a weapon by a convicted felon.
¶ 33. In arriving at its finding, the majority states:
The introduction of the three prior convictions, all drug related, supported the State’s theory as to motive, and thus prejudiced Herrington. The three prior convictions also tainted Herrington’s testimony as to why McNeal owed him money. It is likely the jury inferred that Herrington was lying due to his prior drug-related convictions.
Maj. Op. at (¶ 16). I fail to understand the majority’s logic.
¶ 34. With respect to motive, it was the State’s theory that Herrington shot McNeal because McNeal owed him thirteen dollars and failed to pay. That the State also may have theorized that the debt may have been owed for drugs bought on credit is irrelevant, as it was not the State’s theory that the shooting occurred over a drug transaction gone badly. No one alleged that the shooting and the drug transaction, if indeed there was one, occurred in close proximity to each other. *1250 While McNeal’s and Herrington’s testimony differed as to the reason for the debt, it was undisputed that McNeal owed Her-rington thirteen dollars and did not pay Herrington the money when Herrington confronted him about payment.
¶ 35. It seems to me that the motive for the shooting was made clear by Herring-ton’s own testimony. As the majority notes, Herrington admitted confronting McNeal on the morning of the shooting and asking: “Dude, you got my money?” McNeal’s answer — “I’m going to holler at you at 5 o’clock. Come by my house.”— was hardly what Herrington wanted to hear. Thus, it is not likely that the jury would have been prejudiced against Her-rington because of the admission of evidence that may have tended to explain the reason for the debt. The jury did not have to determine if a debt was owed as a prerequisite to determining whether Her-rington shot McNeal. Were that the case, I could understand the majority’s reasoning. Certainly a jury would more likely believe that the debt was a drug debt since Herrington was a thrice-convicted drug offender. But as stated, the shooting did not take place because of the nature of the debt; it occurred because of the nonpayment of it.
¶ 36. I should also note that the jury did not need to hear evidence of Herring-ton’s prior drug offenses to help it make up its mind that McNeal’s explanation was more plausible. It is unlikely that any jury would believe that one can bail out of jail on a thirteen-dollar bond for running a roadblock. On its face, Herrington’s explanation of the reason for the debt is not believable. On the other hand, I am sure it was not lost on the jury that, unfortunately, many persons have not only been shot, but have been killed over a lot less money than thirteen dollars.
¶ 37. For the reasons presented, I dissent.
CARLTON, J., JOINS THIS OPINION.